# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2021

Lyle W. Cayce
Clerk

No. 20-20334

AISHA WRIGHT,

*Plaintiff—Appellant,*

*versus*

UNION PACIFIC RAILROAD COMPANY,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-203

Before STEWART, HIGGINSON, and WILSON, *Circuit Judges.*
CORY T. WILSON, *Circuit Judge:*

Aisha Wright sued her former employer, Union Pacific Railroad Company, alleging that Union Pacific violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, by suspending her, and later terminating her, in retaliation for her 2016 lawsuit against the company and her 2018 internal complaint. Wright also alleged that Union Pacific violated the Railway Labor Act ("RLA"), 45 U.S.C. § 152, and the Texas Labor Code ("TLC"), TEX. LAB. CODE §§ 101.001 and 101.301, by retaliating against her because of her requests for union representation. The district court granted Union Pacific's motion to dismiss, and Wright appeals. We

AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

## BACKGROUND

Wright worked for Union Pacific Railroad Company from 1996 to 2018. Relevant to this case, in 2013, Wright began working as a claims representative at Union Pacific's Palestine, Texas location. In 2015, Wright lodged complaints of discrimination and retaliation both internally at Union Pacific and with the Equal Employment Opportunity Commission.

Union Pacific terminated Wright from the claims-representative position in March 2016. But as a union member, Wright had "bumping" rights that allowed her to seek another position with Union Pacific. Exercising those rights, in April 2016, Wright began working as a materials handler at Union Pacific's Houston warehouse. The same month, Wright's new supervisor, Duane Merchant, asked Wright about her employment discrimination claims. During that discussion, Merchant told Wright that her husband had also filed a complaint against Union Pacific and actually referred Wright to two attorneys.

In August 2016, Wright sued Union Pacific for the discrimination and retaliation she allegedly experienced at the Palestine location. The parties settled that case in January 2018. Five months later, in June 2018, Wright disagreed with Merchant about her pay during some time off and appealed to Merchant's supervisor. Wright alleges that Merchant's behavior changed after this pay dispute, with Merchant trying to find ways to damage Wright's employment record.

On July 10, 2018, Merchant called Wright to review video of Wright receiving merchandise. Apparently, some fuel injectors were missing from a delivery of supplies. Wright maintained that she did nothing wrong.

Case 4:22-cv-03174   Document 1-15   Filed on 09/22/23 in TXSD   Page 3 of 11

No. 20-20334

On July 19, 2018, Merchant informed Wright that she was writing Wright up and instructed Wright to undergo coaching after work. When Wright requested union representation for the coaching session, Merchant called local union chairman Dennis Williams but was unable to reach him. Merchant advised Wright that she should nonetheless proceed with coaching. Wright agreed to coaching but again requested representation. Wright then called a national union representative, Jeff Egnoske. During the call, Wright experienced labored breathing, so much that Egnoske urged her to seek medical attention. Wright went to the emergency room, where she learned that she was having a panic attack.

Wright returned to work the next day, Friday, July 20, 2018. Again, Merchant instructed Wright to undergo coaching. And again, Wright requested union representation during the coaching session. In response, Merchant placed Wright on a different assignment. After speaking with a union representative, Wright asked Merchant to postpone the coaching session until a union representative was available. Merchant responded that Wright would work on another assignment until she completed coaching.

The same day, Wright called Union Pacific's internal Equal Employment Opportunity ("EEO") line. Wright complained that Merchant had created a hostile work environment and discriminated against her. Wright also complained that Merchant seemed to mock her for requesting union representation before she would participate in the coaching session.

On Monday, July 23, the first business day after Wright's internal complaint, Merchant again instructed Wright to complete the coaching session. Merchant informed Wright that failure to undergo coaching could trigger discipline. When Wright requested union representation again, Merchant suspended her for insubordination.

No. 20-20334

On July 24, union representatives called Wright and instructed her to come to work the next day for coaching with Merchant. Dennis Williams was set to participate as Wright's union representative. But when Wright arrived at work on July 25, Merchant was not there. A supervisor tried calling Merchant but could not reach her. Williams then instructed Wright to go home.

The same day, Union Pacific notified Wright of a disciplinary hearing against her. At the hearing on August 15, 2018, Wright testified that she never refused coaching but simply requested to have a union representative present. Wright also testified that she had received union representation for earlier coaching sessions at Union Pacific. On August 23, 2018, a month after Wright's internal EEO complaint, Union Pacific terminated Wright for insubordination.

Wright subsequently filed this action against Union Pacific. In her complaint, Wright alleged that Union Pacific violated Title VII by suspending her and then terminating her in retaliation for her 2016 lawsuit against the company and her 2018 internal EEO complaint. Wright also alleged that Union Pacific violated the RLA, 45 U.S.C. § 152, and the TLC, TEX. LAB. CODE §§ 101.001 and 101.301, by retaliating against her for requesting union representation during the coaching session Merchant required.

After Wright filed her Second Amended Complaint, Union Pacific moved to dismiss Wright's suit for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The district court granted Union Pacific's motion. The court dismissed Wright's Title VII claim for failure to state a claim, holding that Wright did not show a causal connection between her termination and her earlier lawsuit and internal complaint. The

court also dismissed Wright's RLA claim for lack of jurisdiction and, alternatively, for failure to state a claim, reasoning that arbitration was the exclusive remedy instead. The court similarly dismissed Wright's TLC claim for failure to state a claim.

Wright now appeals. She contends that she plausibly alleged causation to support her Title VII retaliation claim, properly brought her RLA retaliation claim in federal court, and plausibly alleged retaliation under TLC §§ 101.001 and 101.301. We review each of these contentions in turn.

## STANDARD OF REVIEW

We review both dismissals for failure to state a claim and dismissals for lack of jurisdiction de novo. *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 701–02 (5th Cir. 2007); *Ramming v. United* States, 281 F.3d 158, 161 (5th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### A.

First, Wright asserts that Union Pacific violated Title VII by terminating her in retaliation for her 2016 lawsuit and her 2018 internal EEO complaint. To establish Title VII retaliation, Wright must show that 1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse

No. 20-20334

employment action. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

Finding "no evidence . . . that Merchant retaliated against Wright after she complained," the district court dismissed Wright's Title VII claim because she failed to show causation. But a plaintiff does "not have to submit evidence to establish a prima facie case . . . at [the pleading] stage." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *see also Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("[A] plaintiff need not make out a prima facie case . . . to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim."). Rather, Wright only needed "plausibly [to] allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019) (vacating Rule 12(b)(6) dismissal of a Title VII claim, despite lack of evidence, because plaintiffs plausibly alleged disparate treatment). Thus, the district court erred to the extent it required Wright to substantiate her Title VII retaliation claim with evidence at the pleading stage.

Beyond that, the parties dispute whether Wright plausibly alleged the ultimate element of causation. To do so, Wright had to plead facts permitting a reasonable inference that Union Pacific terminated her because of her 2016 lawsuit or her 2018 internal EEO complaint. *See Iqbal*, 556 U.S. at 678. First, Union Pacific contends that Wright's 2016 lawsuit was too remote to have caused retaliation. We agree.

By Wright's own account, Merchant knew about the claims underlying Wright's 2016 lawsuit in April 2016. Yet Wright was not suspended until July 2018, or terminated until August 2018, more than two years later. Even given Merchant's awareness of Wright's 2016 lawsuit, this two-year lapse is indeed too remote to permit a reasonable inference of causation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)

No. 20-20334

(holding that an adverse action taken twenty months after employer became aware of protected activity "suggests, by itself, no causality at all"); *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (affirming dismissal of retaliation claim because "a three-year lapse, at best, between the protected activity and the adverse employment action is too attenuated temporally to state a claim for relief, even if [plaintiff's supervisor] was aware of the activity").

But Wright's 2018 internal complaint is a different matter. That call to Union Pacific's EEO line is fairly contemporaneous with Union Pacific's adverse actions. Merchant suspended Wright just one business day after Wright complained internally. And about a month later, Union Pacific terminated Wright. This close timing permits an inference of causation. *See, e.g.*, *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (finding that "the close timing between [plaintiff's] protected activity and the denial of a raise—about two months—is sufficient to show causal connection").

Union Pacific counters that Wright did not allege that Merchant or any other decision-maker knew about the 2018 internal EEO complaint when the adverse employment actions were taken. "We have determined that, in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)). Quite logically, "[i]f an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney*, 179 F.3d at 168. At the pleading stage, this means that Wright was required to allege facts permitting at least an inference of her employer's knowledge of her protected conduct in order to establish the required causal link between her conduct and the alleged retaliation. *See*

No. 20-20334

*Manning*, 332 F.3d at 883 & n.6; *Chaney*, 179 F.3d at 168. We conclude that Wright sufficiently alleged such facts.

According to Wright's complaint, Merchant initially agreed to coach her with union representation present. But after Wright complained internally, Merchant suspended her for refusing to undergo coaching without union representation. Then, when union representatives scheduled a coaching session with Wright and Merchant, Merchant did not show. This alleged change in Merchant's behavior, coupled with the close timing of the adverse actions taken by Union Pacific, permits an inference that Merchant knew about Wright's 2018 internal EEO complaint. *Cf. Robinson v. Jackson State Univ.*, 714 F. App'x 354, 361 (5th Cir. 2017) ("All the categories of evidence outlined above [including] temporal proximity [and] . . . changed decisionmaker behavior following complaints, . . . are among the prototypical circumstantial indicators of decisionmaker knowledge (and of causation in a broader sense)."). At least at the pleading stage, Wright plausibly alleged a causal link between her 2018 internal EEO complaint and her subsequent suspension and termination. We therefore reverse the district court's Rule 12(b)(6) dismissal of Wright's Title VII claim and remand for further proceedings.

## B.

Next, Wright contends that Union Pacific violated the RLA by terminating her in retaliation for her requests for union representation. *See* 45 U.S.C. § 152, Third and Fourth. The provisions enumerated in RLA § 152 protect "employees' freedom to organize and to make choice of their representatives" without company interference or pressure. *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989) (citation and internal quotation marks omitted). Generally, RLA claims are classed as either "major" disputes, which fall within district courts' narrow

jurisdiction, or "minor" disputes, which are subject to binding arbitration. *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 302–04 (1989) ("*Conrail*"). Concluding that arbitration was the proper remedy here, the district court dismissed Wright's RLA claim for lack of subject-matter jurisdiction and, alternatively, for failure to state a claim. We agree that dismissal was warranted.

Federal jurisdiction over an RLA claim turns on whether the dispute is categorized as "major" or "minor." *Id.* "Major" disputes concern "the formation of collective agreements or efforts to secure them . . . . They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945). "Minor" disputes "contemplate[] the existence of a collective agreement already concluded." *Id.* They relate "to the meaning or proper application of a particular provision with reference to a specific situation." *Id.* In other words, "the claim is to rights accrued, not merely to have new ones created for the future." *Id.*

In major disputes, "district courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury." *Conrail*, 491 U.S. at 303. By contrast, district courts do not have jurisdiction over minor disputes, which are "subject to compulsory and binding arbitration before the National Railroad Adjustment Board, [45 U.S.C. § 153], or before an adjustment board established by the employer and the unions representing the employees." *Id.* "[I]f there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor." *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers – Transp. Div.*, 973 F.3d 326, 335 (5th Cir. 2020) (citation omitted).

Union Pacific bears a "relatively light burden . . . in establishing exclusive arbitral jurisdiction under the RLA." *Conrail*, 491 U.S. at 307. Wright's RLA claim is a minor dispute if her termination was "arguably justified by the terms of the parties' collective-bargaining agreement." *Id.*

Wright contends that her RLA retaliation claim is not a minor dispute because it is independent of the governing collective-bargaining agreement (the "CBA"). But this assertion fails because Wright's claim rests upon the CBA's implied terms. Wright alleges that Union Pacific previously provided union representation during coaching sessions but then terminated her for requesting such representation for her latest coaching session. Union Pacific's past practices regarding union representation involve the CBA's implied terms. *See Conrail*, 491 U.S. at 311. As a result, Wright's RLA claim is a minor dispute subject to arbitration. *See Brotherhood of Ry. Carmen (Div. of TCU) v. Atchison, Topeka & Santa Fe Ry. Co.*, 894 F.2d 1463, 1469 (5th Cir. 1990) (finding that "claims based on implied terms—specifically, the past practices of the parties . . .—do have some arguable basis sufficient to render this a minor dispute").

Fairly clearly, Union Pacific meets its "relatively light burden" here. Wright is not negotiating a new collective agreement for the future. Instead, Wright asserts that Union Pacific previously provided her, and other employees, union representation during coaching and discipline. That is, Wright alleges that Union Pacific violated a right that had "vested in the past." *Burley*, 325 U.S. at 723. It follows that Wright's RLA claim is a minor dispute and subject to the RLA's exclusive and compulsory arbitration provisions.

Moreover, Wright sued only Union Pacific. Her RLA claim is thus not bound up with a claim against her union. *See Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 123 (5th Cir. 1990) (noting that "[a]n

No. 20-20334

exception to the exclusive [arbitral] jurisdiction of the [National Railroad Adjustment] Board exists, however, when the employee has not only a dispute with the employer . . . but also a claim against the union"). This further demonstrates that Wright's RLA claim is a minor dispute subject to arbitration. The district court properly dismissed Wright's RLA claim for lack of jurisdiction.

Finally, Wright contends that Union Pacific violated TLC §§ 101.001 and 101.301 by terminating her in retaliation for her requests for union representation. But "[t]he RLA's arbitral remedy is mandatory and exclusive for minor disputes. State law claims that involve these disputes are pre-empted." *Anderson v. Am. Airlines, Inc.*, 2 F.3d 590, 594 (5th Cir. 1993) (citations omitted). Wright's TLC claim is identical to her RLA claim. Thus, the RLA preempts Wright's TLC claim. And the district court therefore properly dismissed it.

## CONCLUSION

Based on the foregoing, we REVERSE the district court's dismissal of Wright's Title VII retaliation claim and REMAND for further proceedings. We AFFIRM the district court's dismissal of Wright's remaining claims.

AFFIRMED in part, REVERSED in part, and REMANDED.